# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1684V
UNPUBLISHED

| | |
|---|---|
| FRANK COLUCCIO,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: November 14, 2022<br><br>Special Processing Unit (SPU);<br>Ruling on the Record; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA*, for petitioner.

*Sarah Black Rifkin, U.S. Department of Justice, Washington, DC*, for respondent.

### DECISION AWARDING DAMAGES[1]

On October 30, 2019, Frank Coluccio filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 22, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I award **$80,000.00** in compensation for actual pain and suffering, plus **$943.47,** representing out-of-pocket unreimbursed expenses.

## I.     Relevant Procedural History

After the case's initiation three years ago, Respondent indicated a willingness to engage in settlement discussions, but the parties reached an impasse. Accordingly, on May 24, 2021, Respondent filed a Rule 4(c) Report. ECF No. 30, Respondent's Rule 4(c) Report ("Report"). Respondent opposed compensation, arguing in part that Petitioner failed to establish a Table claim because the records did not show onset of his injury within 48 hours of Petitioner's vaccination. Report. at 4-5.

Petitioner filed a Motion for a Ruling on the Record on July 16, 2021, in support of his claim. Petitioner's Motion for Ruling on the Record Regarding Onset, ECF No. 33. Respondent filed a response on July 30, 2021. Respondent's Response to Petitioner's Motion for a Ruling on the Record, ECF No. 34. Petitioner filed a reply on August 6, 2021. Petitioner's Reply Brief, ECF No. 36. On February 9, 2022, I issued a ruling finding Petitioner was entitled to compensation. ECF No. 38.

The parties thereafter attempted to settle damages, but on April 11, 2022, Petitioner filed a status report indicating that he had rejected Respondent's proffer and requested a briefing schedule. ECF No. 42. Petitioner filed a motion for a ruling on the record with regard to damages on June 9, 2022. ECF No. 44, Petitioner's Motion for Ruling on the Record with Regard to Damages and Brief in Support of Damages ("Mot."). Petitioner requests an award of $75,000.00 for pain and suffering, plus $943.47 for unreimbursed out-of-pocket expenses. *Id*. at 17.

Respondent filed his own brief regarding damages on June 22, 2022. ECF No. 45, Respondent's Response to Petitioner's Brief in Support of Damages ("Opp."). Respondent proposed an award of $50,000.00 for pain and suffering, but did not dispute the $943.47 sought for unreimbursable expenses. *Id.* at 2. (Accordingly, that sum will be included in the final award).

Petitioner filed a reply on June 29, 2022, addressing Respondent's arguments. ECF No. 47, Petitioner's Reply Brief in Support of Damages ("Reply").

## II.     Petitioner's Medical Records

Mr. Coluccio received the flu vaccine on October 22, 2018, in his right shoulder. Ex. 2 at 1. Twenty-seven days later on November 18, 2018, Petitioner presented to an

2

urgent care center complaining of right shoulder pain for "3 weeks". Ex. 3 at 8. Upon exam, he exhibited a decreased range of motion and was prescribed ibuprofen and Tylenol for pain control. *Id* at 9-10. Two days later, Petitioner saw his primary care physician, Dr. Ruden, on November 20, 2018. Ex. 4 at 89-90. Petitioner was assessed with "Tendonitis from flu[]shot" and diagnosed with impingement syndrome and adhesive capsulitis *Id.*

Petitioner was next seen on December 7, 2018. Ex. 4 at 91. At that time, he complained of arm pain and numbness for over two months with no history of trauma and "Pain after flu vax…". *Id.*[3] At that time, Petitioner rated his pain as 7-10 out of 10 with certain motions. *Id.* Petitioner exhibited a reduced range of motion with weakness in his right shoulder along with signs of impingement. *Id.* at 93-94. He was diagnosed with impingement syndrome and adhesive capsulitis. *Id.* at 97. An MRI and x-rays on December 7, 2018, revealed tendinosis, tendinitis, and mild to moderate bursitis in his right shoulder. Ex. 5 at 4-5.

Petitioner had a follow-up appointment on December 14, 2018. Upon examination, Petitioner exhibited reduced strength and reduced range of motion. Ex. 4 at 101-102. He was assessed with impingement, syndrome, adhesive capsulitis, and calcific bursitis. *Id.* 99-106. He also received a cortisone injection at that time. *Id.* at 106.

Between January 11, 2019, and March 22, 2019, Petitioner attended 19 physical therapy sessions. Ex. 6. At his initial evaluation, he reported right shoulder pain following a flu shot on October 22, 2018. Ex. 6 at 4. Petitioner reported "pain in his shoulder the following day which he attributed to soreness but … note[d] the pain ha[d] gotten progressively worse over the past few months." *Id.*[4]

Petitioner continued to complain of right shoulder pain at follow-up appointments with his primary care physician on January 22, 2018. Ex. 4 at 107. At that time, he stated he "[h]ad shot of steroids in arm without imporvement [sic] and in P[hysical] T[herapy]". *Id*. On March 22, 2019, Petitioner again complained of shoulder pain, stating his shoulder was still "stiff" and "needs to see where we go". *Id.* at 111.

Petitioner presented to an orthopedist, Dr. Catalano, on April 23, 2019, for continued shoulder pain, stating that "he had a flu shot on 10/22/2018, 7 days after [he] felt great pain with numbness in the right hand." Ex. 7 at 2. Dr. Catalano noted that Petitioner had

---

[3] There is also a reference to left-sided arm pain, which appears to be an error because only Petitioner's right shoulder was examined. *See* ex. 4 at 93.

[4] Petitioner also reported intermittent numbness in his pinky finger and pain radiating into his forearm. Ex. 6 at 4.

3

a steroid injection but "no relief." *Id.* Petitioner reported that "[o]verall pain has improved" but "painful when sleeping on right side, and unable to carry groceries more than a block without shooting pain." He also estimated that he was 60% better and rated his pain at 5 out of 10. *Id.* An examination of Petitioner's right shoulder was unremarkable with no apparent abnormalities, indicating he had full strength with full range of motion. *Id.* at 3.[5] Petitioner was assessed with right shoulder capsulitis and ulnar nerve palsy of the right upper extremity. *Id.* at 4.

A follow-up with Dr. Catalano on June 7, 2019, indicated that Petitioner's right shoulder was improving, but that he still experienced pain. *Id.* at 5-6. Dr. Catalano also noted "no need for a [corticosteroid injection] or surgery at this point."

### III.     Affidavit Evidence

Mr. Coluccio submitted two declarations in support of his claim. Exs. 1, 11. In the first, he stated that he had received a flu vaccine on October 22, 2018, and "had some pain" but was not "immediately concerned". Ex. 1 at 1. However, by the next day his pain increased and gradually worsened "over the next several weeks." *Id.* Petitioner reiterated in his supplemental declaration that he initially felt pain in his right shoulder following his flu shot, and it gradually worsened over the following weeks. Ex. 11 at 1-2. He also described how his injury has impacted his daily life. *Id.* at 2-3.

Mr. John Winter, Petitioner's domestic partner, submitted a declaration in this matter. Ex. 10. He stated that he also received a vaccine on October 22, 2018, and had some initial discomfort. However, where his shoulder pain resolved within 24-36 hours, Petitioner continued to report pain that gradually worsened. *Id.* at 1-2. Mr. Winter also described how Petitioner's shoulder injury impacted his daily life. *Id.*

Amy Winter, John Winter's daughter, and Allison Coluccio, Petitioner's niece, also submitted declarations in this matter adding additional corroborating statements. Ex. 12, 13.

---

[5] Petitioner disputes this, noting that Dr. Catalano described Petitioner's range of motion as "elevation 150, ER [external rotation] 50, IR [internal rotation] to beltline." Ex. 7 at 3. Petitioner notes that normal elevation has a range of 150-180 degrees, external rotation has a range of 90 degrees, and internal rotation has a normal range of 70-90 degrees. The records indicate that Petitioner's range of motion was below normal, describing elevation as 150, however normal elevation has a range of 150-180. Reply at 1-2.

### IV.     Damages

The damages dispute in this case is limited to the proper amount of pain and suffering. Petitioner requests an award of $75,000.00 (Mot. at 17), while Respondent argues that an award of $50,000.00 is reasonable in this case. Opp. at 10.

### A.  Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### B.  Appropriate Compensation for Pain and Suffering

Awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Citing three prior damages decisions awarding between $60,000.00 and $85,000.00 for actual pain and suffering,[7] Mr. Coluccio requests $75,000.00. Mot. at 13-17. In particular, Petitioner emphasizes that he actively treated for approximately 7.5 months, and that his treatment involved nineteen physical therapy sessions, an MRI, x-rays, various anti-inflammatory medications, a cortisone injection, and numerous doctors' appointments. Mot. at 6-9. Petitioner also argues that his symptoms were severe (pain of 7 out of 10) for at least two months, and moderate for the remaining treatment period.

Respondent, by contrast, submits that an award of $50,000.00 is appropriate for pain and suffering. Opp. at 8-10. Respondent argues that Petitioner suffered a comparatively minor injury and received only conservative treatment, including one round of physical therapy, a steroid injection, and three appointments with medical practitioners. *Id.* at 5-6. Respondent cites to four cases in support of his position.[8]

The medical records establish that Petitioner suffered a moderate SIRVA for approximately six months, with moderate lingering pain for at least an additional three months thereafter. Petitioner initially reported arm pain on November 18, 2018, approximately three weeks after his vaccination. Ex. 3 at 8. His pain is not quantified until December 7, 2018, when he rated it as 7-10 out of 10 with certain motions. Ex. 4 at 91. Petitioner received a cortisone injection on December 14, 2018 (*id.* at 106), which reportedly provided no relief. *Id.* at 107. However, he showed gradual improvement throughout his nineteen physical therapy sessions between January 11, and March 22, 2019. During that time, his symptoms decreased, and he showed gradual improvement until he reached a plateau on March 18, 2019. *See* Ex. 6 at 9 (record from January 16, 2019, reporting shoulder still sore, but mobility improved); *id.* at 19 (record from January 30, 2019, noting Petitioner's shoulder improved since starting physical therapy with increased mobility); *id.* at 41 (record from March 18, 2019, stating Petitioner reported his progress had plateaued). By April 23, 2019, Petitioner reported that he was approximately 60% better, but still rated his pain as 5 out of 10. Ex. 7 at 2.

---

[7] *Celuch v. Sec'y of Health & Hum. Servs.* No. 18-544V, 2021 WL 2368137 at *5 (Fed. Cl., 2021) (awarding $70,000.00 in pain and suffering); *Morrison-Langehough v. Sec'y of Health & Hum. Servs.*, No. 19-1103V, 2022 WL 1863924, at *11 (Fed. Cl., 2022) (awarding $70,000.00 in pain and suffering); *Hartman v. Sec'y of Health & Hum. Servs.*, No. 19-1106V, 2022 WL 444456, at *6 (Fed. Cl., 2022) (awarding $75,000.00 in pain and suffering).

[8] *Ramos v. Sec'y of Health & Hum. Servs.,* No. 18-1005V, 2021 WL 688576, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (awarding $40,000.00 for past pain and suffering); *Rayborn v. Sec'y of Health & Hum. Servs.*, No. 18-0226V, 2020 WL 5522948, at *2-3 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for pain and suffering); *Norton v. Sec'y of Health & Hum. Servs.*, No. 19-1432V, 2021 WL 4805231, at *5-6 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $55,000.00 in pain and suffering); and *Clendaniel v. Sec'y of Health & Hum. Servs.*, No. 20-213V, 2021 WL 4258775 (Fed. Cl. Spec. Mstr. Aug. 18, 2021) (awarding $60,000.00 in pain and suffering).

Petitioner's range of motion also gradually improved during that period, reporting increased mobility during his treatment period. *See* Ex. 6 at 19 (record from January 30, 2019, noting Petitioner's shoulder has improved since starting physical therapy with increased mobility). The later records from April 2019 indicate Petitioner exhibited full strength and good range of motion. However, Petitioner called into question the accuracy of these records at least with regard to Petitioner's shoulder mobility as they indicate he continued to have decreased range of motion at that time. Reply at 1-2. Further, as of June 7, 2019, Dr. Catalano indicated there was "no need for a [corticosteroid injection] or surgery at this point." Ex. 7 at 5-6.

These factors support the conclusion that Petitioner's SIRVA was largely moderate for approximately six months, with some lingering pain and reduced range of motion for at least an additional two months. Further, Petitioner's treatment was conservative, and exceeded the six-month period required for severity, but not by much. Nevertheless, although this is unquestionable a moderate SIRVA (that did not require surgical intervention), I do not deem the award proposed by Respondent to be proper. As Petitioner points out in his reply, the cases cited by Respondent involve injuries that were not as severe, petitioners that waited significantly longer for treatment, courses of treatment that were more effective, and pain levels significantly milder than Petitioner described.[9]

Rather, I find that the $75,000.00 requested by Petitioner is more in line with the best relevant comparables. The SIRVA cases cited by Petitioner involved similar courses of treatment over comparable time periods. For example, in *Hartman*, the petitioner was awarded $75,000.00 for a moderate injury that involved conservative treatment including twenty physical therapy sessions over five months. However, certain factors suggest that here, Petitioner's pain and suffering was more severe than in *Hartman*. Petitioner received a cortisone injection, which was unsuccessful. Further, five months after his vaccination Petitioner reported he was only 60% improved, suggesting his treatment was not extremely successful.

Taking all of the above into account, I find that this case presents the rare circumstance where an award a bit *higher* than what Petitioner requests is appropriate. Special masters are empowered to determine "reasonable" damages and are never bound by the parameters of what the parties propose, but can when appropriate go above

---

[9] *Ramos,* 2021 WL 688576, at *5 (petitioner delayed four months to seek treatment and initially reported pain as 3 out of 10); *Rayborn*, 2020 WL 5522948 at *2-3 (petitioner delayed four months and reported pain between 2 and 6 out of ten during her treatment period); *Norton*, 2021 WL 4805231 at *6 (petitioner's injury was found to be mild and ultimately pain-free seven months post vaccination); and *Clendaniel*, 2021 WL 4258775 at *8 (petitioner treated for 14 months, but experienced significant relief at times resulting in long periods of no treatment).

or below even one side's outermost bound. Here, I find that the relevant comparables describe suffering that was slightly less overall than what Mr. Coluccio experienced. As a result, I will award $80,000.00 for his actual pain and suffering.

## V.     Conclusion

Accordingly, for all of the reasons discussed above and based on consideration of the record as a whole, **$80,000.00 represents a fair and appropriate amount of compensation for Mr. Coluccio's actual pain and suffering.** [10] **I also grant Mr. Coluccio's request for $943.47 for past unreimbursed medical expenses.**

**I approve a Vaccine Program award in the total amount of $80,943.47, to be made to Petitioner. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment herewith.**[11]

**IT IS SO ORDERED.**

                                              <u>s/Brian H. Corcoran</u>
                                              Brian H. Corcoran
                                              Chief Special Master

---

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.